[Crim. No. 3187. In Bank.—April 16, 1929.]

THE PEOPLE, Respondent, v. RUSSELL ST. CLAIR BEITZEL, Appellant.

George E. Stoddard and Joseph L. Fainer for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

SHENK, J.—The defendant was convicted of murder of the first degree and judgment of death was pronounced. He appeals from the judgment and from the order denying his motion for a new trial.

It is not contended on the appeal that the evidence is insufficient to justify the verdict and there is no suggestion that the defendant did not commit the crime. The homicide was particularly atrocious as disclosed by the following facts: In the early part of 1927 the defendant was employed as assistant credit manager of a corporation in

Philadelphia. He was a married man and was then living with his family consisting of a wife and two children, four and six years of age. Barbara Mauger was a young woman then about twenty years of age and was employed as a cashier by the same company. In the latter part of April or early in May, 1927, the defendant left his home, took up his residence elsewhere in the city of Philadelphia and began to pay attention to Barbara Mauger at her home where she resided with her parents, and continued to call upon her without disclosing to her or to her parents that he was a married man. On September 10, 1927, the defendant and Miss Mauger disappeared. Two days later the father of the young woman received a note from her stating that she and the defendant had left for South America. Before they disappeared a considerable assortment of baby clothes was delivered at the Mauger home in Philadelphia. The defendant explained to the elder Maugers that he had purchased the clothes for his brother's expected child. In the note sent by Barbara to her parents she advised them that she expected to marry the defendant and that the baby clothes belonged to her, as she expected to have a baby. The defendant and the young woman went direct to Los Angeles, arriving there on September 17, 1927. They resided at various places in that city, representing themselves to be husband and wife under the names of R. Scott and Barbara Burholme. The last place they resided was at 841 Golden Avenue in the city of Los Angeles.

On June 24, 1928, the defendant and Barbara were seen to leave their home in an automobile. The defendant returned to his home alone. On the evening of the same day a neighbor called to see Barbara and was told by the defendant that Barbara had taken a ride down to Long Beach and that "she wouldn't be back." On the next day the defendant told the neighborhood groceryman that Barbara had gone away. On the same day he told a neighbor that he had taken Barbara to Long Beach, where she had met her aunt from San Diego and that she had gone to New York with the aunt. A few days later he stated that he had received a telegram from Barbara from Phoenix, Arizona, and later that he had heard from her in Texas.

On the afternoon of August 2, 1928, two boys en route to Scout Camp were traveling along Mulholland highway which follows the crest of the Santa Monica mountains. When the boys were about five miles northwesterly from Hollywood their suspicions were aroused by a buzzard flying around a point near the highway. They stopped, entered upon an investigation, were met with an ''awful smell,'' discovered clothing that appeared to have been torn and saw what they thought were blood stains on the ground. They immediately notified the forest ranger, who returned with them to the spot and found a dismembered and disintegrating body which was later positively identified as the body of Barbara Mauger. Near the place they also found the skull and a full-time fetus. It was in evidence that the deceased expected to be confined on or about July 27, 1928, which was about a month after the homicide.

The autopsy disclosed that a bullet had entered the right temple of the deceased near the outer angle of the right eye, had passed through the right orbit to the wall of the nose, passed under the bridge of the nose to an exit from the left orbit. A second bullet had penetrated the base of the skull. Another bullet was found in the body.

The day after the discovery the defendant was arrested. He admitted that the statements made to the neighbors shortly after the disappearance of the deceased were false. He also admitted that on the afternoon of June 24th he had taken a ride into the hills with Barbara. He claimed that he had had a petty quarrel with her while on the ride and that as a result thereof Barbara had gotten out of the automobile and left him. He also admitted that on the day after the disappearance of Barbara he had wrapped her personal effects and some of the baby clothes in a bundle and mailed them to Phoenix, Arizona, to a Mr. Stone, a fictitious person, as addressee, giving a return address in Seattle, Washington. The possession of a revolver equipped for the same caliber of bullets as those found in the body of the deceased was shown to have been in the defendant's possession a few days before the homicide. This gun was found in his possession at the time of the arrest. Because of peculiar ''spurs'' in the nozzle of the gun and ''gouges'' on the bullets found in the body

of the deceased, a firearms expert testified that these bullets were fired from this particular gun.

As grounds for reversal the defendant urges prejudicial misconduct on the part of the trial judge in admonishing his counsel from time to time during the first half of the trial and finally in adjudging said counsel guilty of contempt. The trial commenced on September 6, 1928. The defendant was then represented by Messrs. Vernon Hamilton and George E. Stoddard, attorneys of his own choice. The trial proceeded on that day and again on September 7th when an adjournment was taken to September 11th, on which day Mr. Stoddard, by leave of court and with the defendant's consent, withdrew from the case. The trial continued on the 11th and 12th with Mr. Hamilton as the defendant's sole counsel. He had repeatedly offended by being tardy at the sessions of the court and had been admonished by the court that he must be on time. At the opening of court on Thursday the 13th he was not present when court convened. The defendant offered to proceed without his counsel, but was advised by the court that as long as he had an attorney, his attorney must speak for him and try the case. The defendant then said: "If your Honor please, my attorney knows he is going to be dismissed this morning. That may or may not be the reason he is not here." The defendant then expressed a desire to discharge his attorney and requested an adjournment until 2 o'clock in the afternoon so that he might return with an attorney to continue the trial. Attorney Hamilton then entered the courtroom and after offering an excuse for his tardiness which was deemed insufficient by the court, and we think properly so, was adjudged guilty of contempt and sentenced to three days in jail. The court then inquired of the defendant whether it was still his desire to discharge his counsel. The defendant gave an affirmative answer and asked for time to engage other counsel. The court then at length admonished the members of the jury that they should in nowise consider what had taken place with reference to Mr. Hamilton as having anything to do with the case and a recess was taken until 2 o'clock. At the latter hour the defendant appeared with Joseph L. Fainer as his counsel. At the request of the new attorney the cause was continued for

further trial until Monday, September 17th, to enable him to familiarize himself with the case. At the opening of court on the 17th Mr. Stoddard re-entered the case. By proper order of substitution Mr. Fainer and Mr. Stoddard became counsel for the defendant and continued to act as such until the close of the trial, which consumed several days.

We find nothing in the incident complained of which is the subject of just criticism. We are unable to conclude that the defendant was prejudiced thereby in any substantial sense. In fact, the impulse of a fair-minded jury might reasonably be said to have reacted in his favor under the circumstances here shown. The trial of the cause was necessarily prolonged by reason of the change in the attorneys for the defendant, but an examination of the record discloses that the defendant was ably represented by counsel and that he had a fair trial on all of the issues presented.

The next contention is that the court committed error in refusing to strike certain testimony of the officer, Sanderson, wherein the witness described a particular point on a photograph as the point "where the body of Barbara Mauger was found." The objection to that portion of the answer was that it assumed that the body found was the body of Barbara Mauger and was a conclusion of the witness. Assuming the objection technically well taken, no possible prejudice resulted from the ruling for the reason that the body had theretofore been identified as that of Barbara Mauger and there was and is no evidence in the record to the contrary.

Defendant's counsel offered two instructions on the question of motive. These were refused, but the court correctly and adequately covered that subject by other instructions given.

The last point made for reversal is that a copy of the transcript of the testimony taken before the grand jury was not served on the defendant prior to the trial as required by section 925 of the Penal Code. The transcript had not been delivered as required by the code section and on the second day of the trial the defendant's counsel made formal demand for a copy thereof. The demand was complied with forthwith, whereupon defendant's

counsel waived further objection on the point, provided the trial be continued until Tuesday the 11th, which was done. Counsel now make the point that the code section is mandatory and beyond the power of the defendant to waive. We see no merit in the contention. The purpose of the code section is to apprise the defendant of the nature of the testimony taken before the grand jury and it may be assumed that a failure to deliver a copy of the transcript within the time prescribed would, unless the defendant consents otherwise, result in a continuance of the trial on his motion as a matter of right. But where, as here, the defendant waived statutory rights intended for his benefit under circumstances fully affording protection, no harm to him could possibly result.

We find no error in the record and no doubt of the defendant's guilt may be entertained. The judgment and order are therefore affirmed.

Richards, J., Seawell, J., Preston, J., Waste, C. J., Curtis, J., and Langdon, J., concurred.