[Crim. No. 2018. Second Appellate District, Division One.—February 7, 1931.]

THE PEOPLE, Respondent, v. ROY VERNON QUINN, Appellant.

[Crim. No. 2019. Second Appellate District, Division One.—February 7, 1931.]

THE PEOPLE, Respondent, v. CHARLES LEE QUINN, Appellant.

Charles J. Orbison and Don S. Irwin for Appellants.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

HOUSER, J.—By a separate information, each of the defendants was charged with the crime of robbery; also with

a prior conviction of a felony. By stipulation of the several interested parties, the two actions were tried simultaneously. From a judgment of conviction, as well as from an order by which his motion for a new trial was denied, each of the defendants has appealed to this court.

The details of the story of the commission of the offense for which the defendants were placed on trial do not materially differ from those attending any other robbery of recent years in this vicinity. It is only in the remarkable facts which were presented to the jury in the defense of the defendants that one may realize the possibility, if not the probability, that an injustice to the defendants may have resulted from the judgment of the court.

A restaurant in the eastern portion of the city of Pasadena was the scene of the robbery. At the trial of the action the proprietor of the restaurant, his wife and each of two patrons of the establishment identified each of the defendants as one of the persons who committed the robbery. However, such identification of defendant Charles Lee Quinn was somewhat weakened, particularly by the fact that at least as to two of such witnesses, on an occasion following the date of the robbery, when afforded a most favorable opportunity to identify said defendant, they failed to recognize him or to associate him with the commission of the offense. A part of the evidence introduced by defendants consisted of an unquestioned showing that on the date when the crime was committed and covering a period of many days both preceding such date as well as subsequent thereto, defendant Roy Vernon Quinn was serving a sentence, and during all such time was supposedly incarcerated, in a jail in the city of Los Angeles. However, it appeared in evidence that the so-called "honor jail" in which Roy Vernon Quinn presumably was confined at the time when the robbery occurred consisted of a large room on the ground floor of a one-story building having ordinary windows which had no iron bars to prevent the escape of defendant therefrom, but that as a sort of "precaution", defendant, together with several other prisoners who occupied the same "honor jail" were guarded night and day by two officers who at intervals, and especially at 10:30 o'clock P. M. and 7 o'clock A. M. of each day, "checked" the defendant as being present in the jail;—from which it would follow that the only ap-

parent possibility that defendant Roy Vernon Quinn person-ally participated in the commission of the offense for which he was on trial was that at some time between the hours of 10:30 o'clock P. M. and 7 o'clock A. M. of the following day he escaped from the "honor jail" in which he was confined in the city of Los Angeles, made the necessary preparation to commit the crime, went to the restaurant in the eastern part of the city of Pasadena where the crime was committed at about 1:30 o'clock A. M., returned to, "broke into" the "honor jail" from which previously he had escaped and resumed his character as an inmate thereof;—all without the knowledge, acquiescence or consent of either of the two guards who presumably were watching the window and the door exits of the jail for the purpose of detecting and frustrating any escape therefrom which might be attempted by any person incarcerated therein, if not of preventing any unlawful or clandestine entrance thereof.

In the defense of Charles Lee Quinn testimony was given by several witnesses which tended to establish for him an "alibi" in that, if such witnesses spoke the truth, the im-possibility of his guilt was satisfactorily established.

But especially in view of the verdict returned by the jury, which presumably was concurred in by the judge of the trial court, in addition to such a unique situation was the added testimony of a man named Abbott, who at the time of the trial in question was being held in custody in the Los Angeles County jail awaiting his own trial on a charge of robbery, to the effect that he and an unnamed companion together committed the robbery for which defendants Roy Vernon Quinn and Charles Lee Quinn were then on trial, and that neither of such defendants participated in any way in its commission. Such an extraordinary situation as regards the evidence in a criminal action should demand a corresponding attention by a reviewing court to the rea-sons assigned by the appellants for a reversal of the judg-ment against them.

Over the objection of counsel for defendants, the prosecution was permitted to ask the witness Abbott the fol-lowing question: "What charge are you in jail now on?" to which the witness answered "Robbery".

Although in itself, the fact that the witness voluntarily testified that it was he, together with an unnamed com-

panion, who committed the robbery for which defendants were then on trial might place him in such an unenviable light that his credibility as a witness might have been seriously questioned, nevertheless the defendants in the instant action were entitled to the benefit of the rule which for the purpose of impeachment forbids "evidence of particular wrongful acts, except . . . that he had been convicted of a felony". (Sec. 2051, Code Civ. Proc.; *People* v. *Hamblin,* 68 Cal. 101 [8 Pac. 687]; *People* v. *Dong,* 106 Cal. 83 [39 Pac. 12]; *People* v. *Warren,* 134 Cal. 202 [66 Pac. 212]; *People* v. *White,* 142 Cal. 292 [75 Pac. 828].) Had the jury not been placed in possession of evidence of the fact that at the time when the witness gave his testimony he was then an inmate of the county jail awaiting his trial on a charge of robbery, it is possible that the jury might have had a reasonable doubt as to the guilt of the defendants in the instant action, which necessarily would have resulted in their acquittal.

In describing the jail in which defendant Roy Vernon Quinn supposedly was confined at the time when the robbery in question was committed, the head jailer at the prison made the following statement: "This jail is a big open jail, three big rooms, they are all larger than this, about twice the size of the court room, there is windows all around this place, and there are two men that watches these men nights and days, they are checked in and out, but as far as knowing whether they are really there all the time or not, one can get away from us very easy—"

A motion made by defendants to strike the ":conclusion" of the witness was denied. Identical action was taken by the trial court as to a subsequent statement made by the witness that it was "possible for a man to get out of there in the middle of the night and come back in the morning and not be missed". However, other statements made by the witness, to wit, that "I have had men get away from there and come back—"; and that "It is possible. I have caught them doing it—"; by order of the court were stricken from the record.

From a consideration of the foregoing, it is plain that the answers of the witness, to which objections made by counsel for defendants were overruled, not only were conclusions of the witness, but as well that the further conclu-

sions of the witness to which attention has been directed, and which were ordered stricken from the record, but had the effect of accentuating the other conclusions which were left undisturbed for the consideration of the jury. It is further manifest that because of the asserted reason that one of the statements had been "stricken out", the conduct of the trial court in refusing to admonish the jury that "that evidence shall not be considered", added to the prejudice of the defendants. No argument should be necessary to establish the point that after the conditions surrounding the incarceration of defendant Roy Vernon Quinn had been fully described by the witness, the ultimate question of whether sufficient evidence had been presented to create in the "mind" of the jury a reasonable doubt of whether said defendant was in jail at the very time that the crime was committed was one solely for determination by the jury, unaided by any suggestion by the witness that because others had been able to do so, it was possible that the defendant Roy Vernon Quinn might have escaped the jail, committed the robbery, and thereafter returned to the jail without the knowledge of anyone charged with the duty of keeping him continuously in prison during the time of his sentence thereto.

Over the strenuous objection of counsel for defendants, the prosecution was permitted to introduce evidence to the effect that several weeks after the crime for which defendants were on trial was committed, the defendants were originally arrested on a charge of carrying concealed weapons and thereafter "booked on a suspicion of robbery". Also, that when so arrested the defendants were in possession of an automobile in which a "gun" was found. No connection was shown between either or any of such facts and the crime for which defendants were on trial, or with any fact relevant thereto. Following their discharge from custody on the charge of carrying concealed weapons, which was preferred against them at that time, defendants were re-arrested and were then charged with the commission of the robbery of which they were convicted in the instant case. That the evidence to which objection was made was inadmissible is ruled in each of the authorities to which attention hereinbefore has been directed. In addition thereto, especially as to the inadmissibility of evidence that at the time

620

defendants were arrested on a charge of carrying concealed weapons a ''gun'' was found in an automobile which defendants were operating, see *People* v. *Milburn,* 89 Cal. App. 526 [265 Pac. 295].

■ Further complaint is made by appellants that the trial court committed prejudicial error as against defendants by modifying a certain instruction offered by them and thereafter giving to the jury the instruction as thus modified. The instruction in question dealt with the so-called ''defense'' of an alibi.

With the exception that, as requested by defendants, no words of the instruction were italicized, it was as follows:

''The court instructs the jury that if you do not believe from the evidence that the defendants were present at the time and place when and where the offense, if any, was committed, but that they were at some other and different place or places, *or if you have a reasonable doubt as to whether this is the case,* then you will find them not guilty. *The defendants are presumed to be innocent until their guilt is established by legal evidence beyond a reasonable doubt, and if you have a reasonable doubt of their guilt you will acquit them.*''

All the words italicized in the foregoing instruction were stricken by the trial court and, as thus modified, the instruction was given to the jury. In effect, the essential difference between the first part of the instruction requested by defendants and that given by the trial court was that, had the former instruction been given, in substance the jury would have been told that if from the evidence the jury had a reasonable doubt as to whether at the time the robbery was committed defendants ''were at some other and different place or places'' than that at which the crime actually occurred, they were entitled to an acquittal; whereas by the instruction as modified and thus given to the jury it was informed that ''if you do not believe from the evidence that the defendants were present at the time and place when and where the offense, if any, was committed, but that they were at some other and different place or places, then you will find them not guilty''.

It thus will be seen that the element of ''reasonable doubt'' as to the whereabouts of defendants at the time the crime was committed was omitted from the instruction

given to the jury. The authorities of this state are unanimous in the declaration of the law that as to the ''defense'' of alibi, if the defendant introduces sufficient evidence to raise a reasonable doubt as to his guilt, he is entitled to an acquittal. (*People* v. *Winters,* 125 Cal. 325 [57 Pac. 1067]; *People* v. *Roberts,* 122 Cal. 377 [55 Pac. 137]; *People* v. *Garrett,* 93 Cal. App. 77 [268 Pac. 1071]; *People* v. *Mar Gin Suie,* 11 Cal. App. 42, 57 [103 Pac. 951].)

■ It is further contended by appellants that prejudicial error was committed by the trial court in giving to the jury, at the request of the People, the following instruction:

''The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt, that the defendants or either of them feloniously took from the person or the immediate presence of *Robert Mullins,* the property, or any part thereof, as charged in the Information, by means of *force used upon Robert Mullins,* as charged in the Information, or aided, abetted and assisted any other person or persons to so feloniously take from the person or the immediate presence of the said *Robert Mullins,* the property or any part thereof as charged in the Information, by means of force or fear and against the will and consent of the said *Robert Mullins* as charged in the Information then you should find the defendants guilty.''

On reading the foregoing instruction, at once it will be noted that its gist consists in a statement that if *either* of the defendants committed the robbery in question, or if *either* of them aided or abetted any other person in its commission, then the jury should find *both* of the defendants guilty. It should be remembered that the defendants were not charged jointly, but that each of them was separately charged with the commission of the offense, and that the ''defense'' of ''alibi'' of one defendant rested upon an entirely different state of facts and circumstances from that presented by his co-defendant. It was altogether possible that one of them was guilty of the offense of which he was charged and at the same time that his co-defendant was wholly innocent. But in the instruction of the trial court, if ''*either* of them feloniously took from the person or the immediate presence'' of the victim of the robbery the property, or any part thereof, as charged in the information,

622

or "aided, abetted and assisted" any other person in the commission of the offense, it would become the duty of the jury to "find the *defendants* guilty". The prejudicial effect of such an instruction is most obvious.

It becomes unnecessary to consider either of several other alleged errors which defendants assert were committed on the trial of the action.

The judgment, and the order denying the motion of each of the defendants for a new trial, are reversed.

Conrey, P. J., and York, J., concurred.

THE PEOPLE, Respondent, v. CHARLES WILEY, Appellant.