[Crim. No. 4105.    Second Dist., Div. Three.    July 30, 1947.]

THE PEOPLE, Respondent, v. FREDERICK C. LEWIS, Appellant.

Paul E. Tapley and E. W. Miller for Appellant.

Fred N. Houser, Attorney General, and Alberta Gattone, Deputy Attorney General, for Respondent.

WOOD, J.—Defendant was found guilty, as charged by information, with violation of section 503 of the Vehicle Code (theft of an automobile), and with the crime of robbery in the first degree. He was also found guilty, as charged by another information, with the crime of robbery in the first degree. The two cases were consolidated for trial, and trial by jury was waived. Defendant appeals from the judgments of conviction.

Appellant contends that the evidence was insufficient to identify him as one of the robbers, and that the evidence in support of his alibi created a reasonable doubt as to his guilt.

On June 7, 1946, about 10:30 a. m., one Calvert left his automobile, a blue 1940 Buick sport coupe, license number 9R9174, with the keys in the ignition lock, at 825 East 29th Street in the city of Los Angeles. About 12:15 p. m. of that day Mr. Calvert returned and discovered his automobile had been stolen.

On that same day, between 11:30 and 11:45 a. m., three Negro men entered a dry goods store at 3508 South Central Avenue in Los Angeles, and robbed an employee of $115. A witness, called on behalf of the People, testified that at that time he was in the vicinity of the dry goods store and saw three Negro men "right around the corner" from the store, walking fast; that they "cut past" him, went through a service station, and entered a light blue "Buick Club

Coupe" and rushed away; and that a man then ran up and said those three men had just held up a dry goods store. An employee of the dry goods store, Doshia Edwards, identified defendant, at a police show-up the night after the robbery, as one of the robbers. She testified that she was employed as a clerk; that defendant and two other men entered the store on the day of the robbery, and she asked them what they wanted; that the defendant said he wanted a pair of socks; that she showed him some socks and he purchased a pair; that he then walked over to the neckties and asked the witness' opinion about a necktie; that the men remained at each counter about five minutes; that they then walked to the cash register and "banged it" with their hands and attempted to open it; that defendant did not have a gun but one of the other men did have one and he placed it against the back of another clerk, Beatrice Tollman, and forced her to open the cash register; that the three robbers then took the money in their handkerchiefs and left the store; that they were in the store 15 or 20 minutes, and she waited upon one other customer while they were there; that defendant was dressed in a "brown maroon sport shirt," and brown trousers; and that she identified him at the police station after she looked at him "for awhile," after he had walked and turned around.

About 1:45 p. m. of that same day (June 7), three Negro men entered the office of an automobile finance company at 1955 South Figueroa Street in Los Angeles, robbed an employee of $240, and then drove away in a 1940 blue Buick coupe automobile bearing the license number 9R9174 (the license number of the Calvert automobile). An employee of the finance company, Minerva Birkelo, identified defendant in a group of five at a police show-up as one of the robbers. She testified that she was employed as a receptionist; that defendant and two other men entered the office of the company and she asked them what they wanted; that defendant asked her for a "job," and she told him they did not need any "help"; that the three men continued to stand and talk among themselves; that she could not hear what they were saying but she became a little "suspicious"; that she asked them if they wanted anything further, and one of them said they wished to see about a loan on a 1940 Buick automobile; that she summoned a Mr. Carr, who was in charge of loans, and he went outside with them to the automobile

which was in front of the office; that when they returned defendant had a "big, long gun" in his hand; that she saw the automobile outside, a blue 1940 Buick, and there were two Negro men in it who had not come inside; that one of the men who came inside went into a private office and was trying to get into the safe; that defendant "covered the left window"; and the third robber was armed with a machine gun and he said, "Don't any of you move. This is a stick-up"; that an employee of the company went outside and defendant said, "one of the men went out"; that defendant then walked to the "information window," behind which the witness and another employee, Mr. Stephens, were then standing, pointed the gun at them and said, "Give me the cash"; that Mr. Stephens gave him the cash "in the top drawer," and defendant demanded "the other drawer, too," and he "scooped up the cash in his hand and left"; that the robbers were wearing hats and sports shirts, and defendant's hat and shirt were dark in color; that she had talked with them five or ten minutes at the counter before anything happened at all; and that she identified defendant at a police show-up three days after the robbery.

Another employee of the finance company, Mr. Stephens, testified that he was present when the robbery was committed; that one of the robbers was armed with a machine gun and the other two carried pistols; that defendant "strongly resembles" one of the robbers who had a pistol; that the man with the machine gun demanded the money from him, and "held" the gun on him and Miss Birkelo; that they departed in a blue coupe and he made a notation of the license number, which was 9R9174.

About 5:30 p. m. on the same day (June 7) a police officer observed the Calvert automobile parked on the north side of the street in the 1300 block of East 41st Street, and he and other officers watched it until 8:15 p. m. At that time defendant and another Negro by the name of Hammond appeared on the south side of 41st Street, walking in an easterly direction toward the Buick automobile. When they reached a point directly across the street from the automobile they stopped and remained there about three minutes, then they continued walking in an easterly direction, passed the automobile, then walked back, crossed the street at an angle, and entered the front of the automobile. Hammond sat in the driver's seat

and defendant sat beside him. They were then arrested, and Hammond later escaped.

Appellant testified that on the day of the theft of the automobile and the robberies he was "supposed" to be at a clinic at 55th Street and Central Avenue at 8:30 a. m., but instead of going there he went to see a friend, Jerry Hiley, at 866 East 41st Place, who had just been discharged from the Army; that he arrived at the Hiley residence about 6:30 a. m., and stayed there until about 3:30 p. m.; that during that time they played phonograph records and talked about the Army; that while he was there he saw Hiley's mother and sister; that he decided to go to the clinic that night; that he met Hammond in a cafe on the corner of 43d Street and Central Avenue about 7:30 p. m.; that Hammond told him to wait a minute, and he would take him to the clinic; that he asked Hammond why his automobile was on 41st Street, and he replied that it had a flat tire; that on the way to the automobile they were walking on the south side of the street, and Hammond stopped when they were about 300 yards from the automobile and he (the witness) asked what they had stopped for and Hammond told him he knew a girl who stayed in one of the houses on 41st Street, who had just moved into town, and he was going up to talk with her; that they proceeded, however, to the automobile and Hammond unlocked the left front door with a key, entered the automobile, and opened the right front door and appellant got in; that appellant did not know the automobile was stolen; that he had not been in the automobile before; and that he worked for his father who is a contractor, but on the day of the robbery he did not work. He also testified that Jerry Hiley was the only person present at the address where he went to visit him; and that he had never called upon him in that manner before.

A witness, Miss Coleman, called on behalf of defendant, testified that she had known defendant three or four years; that she lived at the Hiley residence, and was there on June 7, 1946 (the day of the crimes); that defendant came to the Hiley residence on the morning of that day and stayed there until the witness went to work, which was about 3:30 p. m.; and that during that time they all played records and "talked around."

It is true, as asserted by appellant, that it is not necessary to prove an alibi beyond a reasonable doubt or by

a preponderance of the evidence. ■ If a defendant introduces evidence in support of an alibi sufficient to raise a reasonable doubt as to his guilt he is entitled to an acquittal (*People* v. *Quinn*, 111 Cal.App. 614, 621 [295 P. 1042].), but the burden is upon him to prove the alibi "to such a degree of certainty as will, upon a consideration of all the evidence, leave a reasonable doubt of his guilt in the minds of the jury." (*People* v. *Alexander*, 78 Cal.App.2d 954, 958 [178 P.2d 813].) ■ In the present case the evidence introduced by appellant was not sufficient to raise such a reasonable doubt. There were contradictions in his testimony as to who were present during the time he allegedly visited Jerry Hiley, and he did not mention that his witness, Miss Coleman, whom he called to corroborate his alibi, was present. Furthermore, appellant was positively identified as one of the robbers by two witnesses to the robberies.

■ Appellant states that there were conflicts in the testimony of Miss Birkelo and Mr. Stephens as to the size of the robbers, what type of gun each carried, and which one pointed his gun at them and demanded the money. Those conflicts are of minor significance considering the positive nature of the testimony as to the identify of appellant. Appellant also claims that the testimony of Miss Birkelo is unreliable because she testified that she was confused and "scared." In addition to her observations of appellant during the time the robbery was actually occurring, she had an opportunity to observe him for a period of five or ten minutes before the robbery, during which time the robbers inquired about work and a loan on the automobile. Miss Edwards also had an opportunity to observe the robbers for about ten minutes prior to the robbery in the dry goods store. The accuracy of the observation of witnesses, and discrepancies and uncertainties in their testimony are matters for the consideration of the trial court. (See *People* v. *Fierro*, 58 Cal.App.2d 215, 221 [136 P.2d 94].) The evidence was amply sufficient to support the judgments of conviction on the two counts of robbery.

■ Appellant further contends that there was no evidence that he either took or drove the automobile in violation of section 503 of the Vehicle Code. That section provides that any person who drives or takes a vehicle without the consent of the owner with intent to permanently or tem-

porarily deprive the owner of his title to or possession of such vehicle, or any person who is a party or accessory to or an accomplice in any such driving or taking, is guilty of a felony. The evidence was sufficient to establish that the automobile was taken and driven in violation of that section, that defendant rode in it in company with others, and that he was sitting in it with another when he was arrested. The evidence was not sufficient, however, to show that defendant took or drove the automobile away or that he aided anyone in so doing, or that he had knowledge that it was taken or driven without the owner's consent. The evidence that the automobile was used in committing the robberies in which appellant participated, and that he was arrested while sitting in the automobile, is not inconsistent with the theory of innocence in the matter of the unlawful taking or driving of the automobile. In *People* v. *Flores*, 58 Cal.App.2d 764 [137 P.2d 767], wherein a judgment of conviction of theft of an automobile was reversed, the defendant had been in the automobile with another person. In that case the court said, at page 769, that the fact that appellant had been in the automobile did not "overcome the presumption of innocence," and did not "establish guilt beyond a reasonable doubt of the gravamen of the offense of grand theft which is the asportation of the property."

The judgments of conviction as to the two counts of robbery are affirmed, and the judgment of conviction as to violation of section 503 of the Vehicle Code is reversed.

Shinn, Acting P. J., and Kincaid, J. pro tem., concurred.