[Crim. No. 8063.   Second Dist., Div. One.   Oct. 11, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. AMOS MOODY GREEN, Defendant and Appellant.

Amos Moody Green, in pro. per., and Harold J. Ackerman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Green and one Rowe were accused of armed robbery in violation of section 211, Penal Code; Green was also charged with three prior felony convictions, which he admitted. Defendants were tried before a jury and found guilty. From the judgment of conviction and order denying a motion for new trial only Green appeals.

While appellant does not question the sufficiency of the evidence to support the jury's verdict, the following résumé reveals the nature of the offense and the clear showing of Green's identity as a perpetrator of the robbery. On April 4, 1961, around 7:30 a. m. Green and codefendant Rowe entered the Esquire Café in Bell Gardens, sat at the bar and ordered beer; there were 8 or 9 other customers in the café who left around 8 a. m. Shortly thereafter, the bartender reached behind him for a cigarette and as he turned around he faced two guns pointed at him by defendants; Green held a .44 caliber magnum revolver (Ex. 1), and Rowe, a .38 caliber revolver (Ex. 2). (These weapons were later found in a car Green was driving when arrested.) Green walked behind the bar and emptied the drawers of the cash register, then ordered the bartender to open the safe. From it Green took a bag of money. After taking $10 or $20 from the bartender, defendants ordered him and a customer, who had entered the bar in the meantime, into the restroom.

Ten days later, on April 14, Green was arrested while driving a car in San Jose. With him were Rowe and two other men, Toney and Thomaston. In the car were a .44 magnum revolver, fully loaded, (concealed on the floorboards in the rear) a .38 caliber revolver (under a rag on the floor near the throttle in front), and a tan suede jacket. Green told officers either he or his girl had access to the car at all times and neither he nor the car had been in Los Angeles County in 1961; and without being advised of the date of the Esquire Café robbery (April 4), he proceeded to provide an alibi for April 4.

Positive identification of Green and Rowe was made by the bartender, and Roweberry and Teer, two customers who observed them in the bar prior to the robbery. The bartender noticed their profile, the color of their hair and the way it was combed, and their clothing and jewelry; upon their arrest, he identified Green in a line-up; he also identified the tan suede jacket as that worn by Green, the .44 magnum revolver as similar to that held by Green during the robbery, and the .38 caliber revolver as similar to that used by Rowe. Roweberry and Teer, seated at the bar in the Esquire Café, identified Green and Rowe as being there just prior to the robbery.

Green offered an alibi defense. Numerous witnesses, including a bar owner, bartender, several employees, various customers, Green's wife and one Toney, placed Green in a bar in Winterhaven, California, from 7:30 to 8 a. m. on April 4. Green did not take the witness stand.

A Mr. Thomaston, who was arrested on April 14 in the car with Green, Rowe and Toney, testified that the three pistols found in the car were his (Toney testified the .38 (Ex. 2) belonged to him) and that on April 4 he was in Santa Cruz. On Green's motion for new trial Thomaston testified that he had committed perjury at the trial and that he and Rowe really committed the robbery and Green was not involved. Green then took the stand for the first time and denied his participation.

Appellant likens his case to *People* v. *Quinn*, 111 Cal.App. 614 [295 P. 1042]. Therein the identification testimony of two witnesses was weak, and a third person confessed to the robbery; however, defendant's unusual alibi is the element that distinguishes the *Quinn* case from the one at bar—at the time of the commission of the offense defendant was confined in an honor jail. The court said that the time factor and circumstances relating to the security of the facility were such that it would have been next to impossible for defendant to have escaped from the jail, made the necessary preparations to commit the crime, gone to Pasadena, committed the robbery there, returned to the jail and taken his place as a prisoner, all without the knowledge of the guards. It was only these "remarkable facts" that prompted a reversal: "Such an *extraordinary situation* as regards the evidence in a criminal action should demand a corresponding attention by a reviewing court to the reasons assigned by the appellants for a reversal of the judgment against them." (Emphasis added.) (*People* v. *Quinn*, 111 Cal.App. 614, 617 [295 P. 1042].) We have quite a different situation here—positive identification of Green, his wearing apparel and the guns used, and no facts presented in his defense "that one may realize the possibility, if not the probability, that an injustice to the [defendant] may have resulted from the judgment of the court." (P. 616.) No unique or remarkable circumstances here exist; this is the all too common case of alibi witnesses the jury did not choose to believe, and on a motion for new trial, a confession by one the trial judge did not consider credible.

Appellant contends first that the trial court erred in admitting evidence of Green's arrest on April 14; that "the fact of defendant's arrest was immaterial and prejudicial." (A.O.B., p. 16.) His claim that he was not arrested for the crime charged herein and that the admission of evidence of his arrest for another offense was error is without merit, for

there is nothing in the record to show that he was arrested on April 14 on any charge other than the one on which he was convicted. This situation bears no similarity to *People* v. *Vidal,* 121 Cal. 221 [53 P. 558], relied on by appellant, wherein defendant was being sought for arrest upon another separate and distinct charge and, in fact, was arrested upon it and not for the one upon which he was convicted.

Green was arrested with Rowe and several others in an automobile in San Jose by a Santa Clara deputy sheriff on April 14, 10 days after the commission of the within robbery. Nothing in the evidence, including testimony of both prosecution and defense witnesses, discloses the offense or reason for which he was arrested. In the absence of such showing it must be presumed that the charge for which Green was placed under arrest was the one at bar. "It is settled, however, that error will not be presumed on appeal [citations], and in the absence of evidence to the contrary it must also be presumed that the officers regularly and lawfully performed their duties. [Citations.]" (*People* v. *Farrara,* 46 Cal.2d 265, 268-269 [294 P.2d 21].) See also *People* v. *Stice,* 165 Cal.App.2d 287 [331 P.2d 468]. We find neither error nor prejudice in the admission of evidence of the fact of Green's arrest.

Appellant claims that it was error to inquire of the arresting officer whether Mr. Toney was one of those arrested with defendant in San Jose; that the purpose of the question was to discredit and impugn his character. Toney was one of four passengers in the car Green was driving when he was arrested. Deputy Ohlsen thereafter had conversations with Green who insisted he had not been in Los Angeles County in 1961; on cross-examination Ohlsen was asked if Green told him that on April 3 he was registered in a hotel in Yuma with Toney; he could recall no such statement but did recall that Green said he left Winterhaven, California, with Toney on April 4. Ohlsen said he also talked to Toney at that time, but an objection precluded testimony concerning what was said. On redirect examination Ohlsen was then asked: "This Mr. Tony [*sic*] was one of the 4 people arrested with defendant in San Jose?"; he then answered, "Yes, sir." Neither objection nor motion to strike was made by Green.

Later Green called Toney as a defense witness. He testified that the .38 caliber revolver (Ex. 2) found in Green's car belonged to him and that he was with Green in Winterhaven on April 4; he also testified extensively concerning the trip

from Salinas to Winterhaven and back between April 1 and 5. Further reference to Toney's arrest on April 14 was not objected to and Toney on both *direct* and cross examination gave detailed and lengthy testimony relative to the events leading up to the arrest; in fact, on *redirect* examination of Toney, defense counsel specifically established the fact of his arrest and the date, fully exploring the subject.

■ It is true, as urged by respondent, that it is proper to present to the trier of fact, on the issue of his bias or prejudice, a defense witness's connection with the accused and his association with him—its nature, length of time and place —even though such testimony might disclose a prior arrest or jail sentence. (*People* v. *Buzzell,* 15 Cal.2d 654 [104 P.2d 503].) However, such matters are generally raised on cross-examination of the witness, at least, after he has testified. "Such cross-examination was relevant to the interest and credibility of the witness and was not rendered improper merely because an answer required disclosure of their prior association in prison." (*People* v. *Buzzell,* 15 Cal.2d 654, 660 [104 P.2d 503].) ■ But the question relative to Toney's arrest was asked and answered on the People's case, long before Toney ever testified for defendant. While it appears that the purpose of the question was then not to discredit Toney or impugn his character but to complete the circumstances and events surrounding the arrest of Green and his statement to Ohlsen, a better question might have been, "Was Toney present when Green was arrested?" However, in view of Toney's subsequent lengthy defense testimony relative to his presence in Green's car at the time of his arrest, his possession and intended use of the guns, and his activities sometime prior to his apprehension; and defense counsel's redirect examination of Toney relative to his arrest and the date and circumstances thereof, we find no basis for prejudice. We do not here have the unusual circumstances or close case found in *People* v. *Quinn,* 111 Cal.App. 614 [295 P. 1042], and what might have been prejudicial there is certainly not here.

Appellant claims that the cross-examination of codefendant Rowe and Toney concerning events immediately prior to Green's arrest on April 14, show an "attempt by district attorney to show defendants were contemplating a robbery of a market on April 14." (A.O.B., p. 18.) The cross-examination of Rowe and Toney shows nothing of the kind; at most it reveals that they went from a bar to the market to get some beer and that Toney went in and bought a 6 pack of beer,

Rowe bought a quart of chocolate milk and Green went in to look for them; and that thereafter, they pulled up around the corner to open the beer but decided against it and drove on. There is a complete absence of anything in the record from which it could be inferred that they intended to, or tried to commit another robbery or even went into the market for such purpose. The evidence simply does not support appellant's claim of error.

He also complains that reference to other weapons, not connected with the crime, found in Green's car at the time of his arrest was error; he refers specifically to exhibit 9 for identification, a .22 caliber revolver; a shotgun was also mentioned. Neither gun was used in the robbery. What evidence concerning these firearms was received was offered by the defense; if error was committed in this regard defendant was responsible for it.

Three guns were found in Green's automobile when he was arrested; two of them, a loaded .44 magnum revolver and a .38 caliber revolver, were identified by the bartender as similar to those used by Green and Rowe in the robbery. The People relying upon these weapons accordingly offered them as exhibits 1 and 2 respectively. The prosecution offered no evidence relative to the other guns; thus we do not find *People* v. *Richardson,* 74 Cal.App.2d 528 [169 P.2d 44], and other similar cases in point. All evidence concerning the guns not used in the robbery but found in Green's car was offered by the defense through extensive direct examination of Toney and Thomaston. The examination of these witnesses by defense counsel relative to the guns, how many there were, who owned them, and what they intended to do with them was an obvious attempt to confuse the ownership of the guns and minimize the identification of the two firearms (Exs. 1 and 2) as similar to those used in the robbery. Lengthy testimony ensued with Thomaston claiming there were three hand guns in the car all belonging to him, and that Ex. 2 (.38 caliber revolver) was not in the vehicle; and with Toney claiming, at variance, that *he* owned Ex. 2 which *was* in the car with a shotgun owned by Green. Whatever the true facts, it is clear that it was the defendant, not the People, who created the situation about which he now complains; and it was only after the defense offered evidence relative to the other guns found in the automobile and in particular, to the .22, that the People on cross-examination of Toney had the .22 caliber revolver marked as Ex. 9 for identification. It was neither offered nor received

in evidence. The defense having offered and relied upon the evidence in question, we find no error and certainly no prejudice.

The fifth alleged error, and which appellant claims caused an unfavorable atmosphere to exist at the trial, was the adjudication of contempt of Green's counsel in the presence of the jury. The record reveals a shameless course of careless conduct toward the trial court's orders throughout the trial, until the judge finally could do nothing but find counsel in contempt in order to ensure his timely presence in court. This he did with decorum, reserve and complete propriety and in such a way that it alone could not possibly have caused prejudice to the defendant. After the noon recess on the first day of trial appellant's counsel was 15 minutes late; after the afternoon recess, he was again late 15 minutes. The court admonished him by saying, "One of the prime requisites in this department is promptness, is getting here on time and attending to your business with dispatch and that is what we will expect of you during the course of this trial." The next day counsel was tardy again and on September 1, after the noon recess he again failed to appear when court reconvened. The trial judge called this to counsel's attention when he finally came in; he said: "It isn't necessary for the court to go any further in the matter. I think you have been sufficiently warned in the matter and the court cites you for contempt at this time. We will take up the matter of punishment for this contempt after the disposal of this case. That is all." The mere citing of counsel for contempt in the presence of the jury is not prejudicial (*People* v. *Beitzel,* 207 Cal. 73 [276 P. 1006]), and we see nothing about the surrounding circumstances or the manner in which the court adjudged him guilty to create any prejudice in the mind of the jury. This was not a doubtful case as claimed by appellant; and whatever prejudice may have existed was created by counsel's own course of conduct long before the court found it necessary to take action. No complaint of misconduct of the court was made by defendant at the time, and we find none in the record before us.

Appellant's final claim of error relates to the admission of exhibit 7, a receipt from a service station in Covina dated April 4, 1961, the date of the robbery. He complains that it constituted hearsay and was a most damaging piece of evidence for it purported to show that he lied to the arresting officer about not being in Los Angeles County in 1961. In the

glove compartment of the car which Green was driving when arrested in San Jose, deputies found a receipt dated 4-4-61 from a Flying A service station in Covina for the sale of a tire. It bears the same number as the automobile license of Green's car. It was offered by the People as exhibit 7. Green had denied to the arresting officer that he or the car, to which only he and his girl friend had access, had been in Los Angeles County in 1961. Green never explained, either to the officers or to the jury, how this receipt came into his possession. The receipt was not offered for the purpose of proving the truth of what it contained—that Green in fact bought a tire from a Flying A station in Covina April 4, 1961, but for a limited purpose—to show a circumstance from which it could be inferred, contrary to Green's statement to the officers, that the car had been in the Los Angeles area in April 1961. Further, the positive identification of Green, the gun he used and the clothing he wore, and other circumstances of his association with Rowe, possession of the gun and the manner of his statement to the deputies, reflect clear-cut evidence of his participation in the robbery; we find nothing to support his claim of prejudice.

For the foregoing reasons the judgment and order are affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 10, 1962.