[Crim. No. 3605.   Second Dist., Div. One.   Jan. 20, 1943.]

THE PEOPLE, Respondent, v. DARRINGTON WEAVER, Appellant.

Lloyd C. Griffith and M. H. Broyles for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WHITE, J.—In an information numbered 84904 and containing thirty-three counts defendant Darrington Weaver was accused in counts 1, 2, 4, 6, 7, 8, 10, 12, 20, 21, 22, 23, 24, 28, 30, 31, 32 and 33 of the crime of violation of section 556 of the Insurance Code of this state, which section denounces as a crime the preparation or presentation of any false or fraudulent claim for the payment of a loss under a contract of insurance. In counts 3, 5, 9 and 11 the same defendant was charged with the crime of forgery; counts 27 and 29 accused him of forgery of fictitious names; charges of violating section 132 of the Penal Code were contained

in counts 13, 14, 15 and 16 alleging the offering of false evidence; violation of section 134 of the Penal Code alleging the preparation of false evidence formed the basis of counts 17 and 18; in count 26 said defendant was charged with the crime of perjury while counts 19 and 25 alleged the commission by defendant Weaver of the crime of subornation of perjury.

In another information bearing number 84905 and containing eight counts defendant Weaver and one Bernice Wilson were jointly charged with the presentation of false or fraudulent insurance claims in contravention of section 556 of the Insurance Code. In each of the aforesaid informations defendant Weaver was charged with a prior conviction of a felony for which he served a term of imprisonment in the state prison.

Defendant Weaver pleaded not guilty to all counts contained in both informations; the causes were regularly consolidated for trial, and prior to such trial defendant Weaver admitted the prior conviction charged against him.

Trial by jury resulted in the conviction of defendant Weaver under information numbered 84904 of counts 20, 21, 22, 23, 24 and 28 charging violations of section 556 of the Insurance Code and he was sentenced to pay a fine of $100 on each of these counts; count 27 charging forgery of fictitious name was dismissed on motion of the district attorney and the jury was unable to agree upon verdicts as to counts 1 to 19 and 30 to 33 in information numbered 84904 and these counts were thereafter dismissed by the court. Guilty verdicts were also returned on counts 25 and 26 charging perjury and subornation of perjury respectively and upon such convictions defendant was sentenced to concurrent terms in the state prison. The conviction under count 29 resulted in defendant Weaver being sentenced to serve one year in the Los Angeles County Jail such sentence to run concurrently with the state prison sentences.

As to information numbered 84905 defendant Weaver and his co-defendant, Bernice Wilson, were convicted on all eight counts charging violation of section 556 of the Insurance Code. A new trial was granted as to count 8 of this information but as to each of the remaining seven counts defendant Weaver was sentenced to pay a fine of $100.

From the judgments of conviction and from orders denying a new trial as to each of the counts contained in both

informations upon which he was convicted, defendant Weaver prosecutes this appeal.

Appellant does not challenge the sufficiency of the evidence to sustain the convictions herein but as grounds for his appeal urges (1) that certain of the judgments are null and void; (2) that the district attorney during the course of the trial was guilty of prejudicial misconduct that prevented the appellant from having a fair and impartial trial; and (3) that the court erred in the giving of certain instructions.

Although the sufficiency of the evidence is conceded it will facilitate the consideration of at least one of the grounds of this appeal to summarize briefly the factual background surrounding this prosecution. The record reveals that appellant acting in concert with one Bernice Jackson who was his secretary advanced the premium for a policy of insurance which he procured for Miss Jackson. The latter then prepared a claim for a supposed accident at the direction of appellant. No such accident had occurred and Miss Jackson testified at the trial that she suffered no injury of any kind, while the claim forms sent to the insurance company alleged that Miss Jackson had suffered a complete fracture of the distal end of the left ulna. At the trial, however, Miss Jackson testified that she never had a broken arm in her life. It appears that the information furnished the insurance company in the aforesaid claim was dictated to Miss Jackson by appellant who obtained the claim blank and stated to Miss Jackson that he was going to obtain some money on her policy. On the claim form or proof of damage appellant directed Miss Jackson to fill out her portion thereof in longhand and then, being a physician, he dictated the medical report in typewriting. The foregoing constitutes some of the evidence in support of counts 20 to 24 of information numbered 84904.

The evidence further shows that Miss Jackson sued the insurance company upon the aforesaid claim in the municipal court, that appellant advised her to commence the action and offered to pay one-half of the filing fee thereof. Miss Jackson refused to pay any part of the filing fee but the complaint was ultimately filed. According to Miss Jackson she never saw the attorney who filed the complaint until the case came to trial. On the last mentioned day appellant showed Miss Jackson an X-ray which he stated to her was an X-ray

of her arm although she testified she had never had an X-ray taken up to that time. According to Miss Jackson she testified at the trial against the insurance company in accordance with instructions appellant had given her as to what she was to say. As a result of the trial Miss Jackson obtained a judgment for $150 against the insurance company and a check for this amount was made out to her and the attorney. After being endorsed by the payees it was turned over to appellant who gave the attorney $25 as his fee, presented Miss Jackson with $50 and appropriated the balance for himself. This evidence is part of that offered in support of count 25 charging subornation of perjury upon which appellant was convicted and sentenced to state prison.

In connection with the municipal court case above referred to against the insurance company, the record in the instant case shows that appellant Weaver testified at that trial. He gave testimony that he treated Bernice Jackson for a complete fracture of the left ulna on the same date the accident occurred and that he took an X-ray of the arm which X-ray was introduced as an exhibit in the civil action. Two X-rays of the arms of Bernice Jackson taken before the trial of appellant in the case now before us were compared with the X-ray offered as an exhibit in the municipal court action, and two X-ray specialists testified that they were not an X-ray of the same person. This comprises a portion of the evidence supporting count 26 wherein defendant was charged with perjury upon conviction of which he was sentenced to state prison.

In support of counts 28 and 29 charging presentation of a false insurance claim and a charge of forgery of a fictitious name, it was shown that appellant signed the name ''Myrtle Roberts'' to an application for insurance and procured Miss Jackson to write a letter in longhand to the insurance company and sign the name ''Myrtle Roberts'' to the letter. A claim adjuster for the Mutual Benefit Health and Accident Association identified the letter to the company and the application for the policy of insurance as records of said company. At the instigation of appellant his co-defendant Bernice Wilson in information numbered 84905 represented herself to the insurance company's representative as the beneficiary under the policy ''Myrtle Roberts.''

In support of the seven convictions upon charges of presenting false insurance claims as charged in information

84905 against appellant and his co-defendant Bernice Wilson it was shown in evidence that the co-defendant Wilson had several policies of insurance and that she took out more than one policy at appellant's suggestion and when claims were made under the policy and not paid, appellant urged Miss Wilson to sue. Some of the money she received on her claims she gave to appellant. When she made several claims for injuries allegedly sustained when she slipped on a bar of soap and fell in the bath tub she made out the forms and claims at appellant's direction and in each of them falsely stated that she had no other insurance. The record indicates that was done by Miss Wilson upon agreement with appellant. On these claims appellant also filled out the medical reports. In making claims to three different companies for the same injury Miss Wilson and appellant gave different information on each of the forms. Bernice Wilson, appellant's co-defendant, made one of the several claims for the same accident in the name of "Rosalie Stewart" and had taken out a policy in that name at a time when she already had two other policies, the existence of which she denied in her application. At the trial it was shown that this type of insurance is pro-rated if there is other insurance and that this information is required and for this reason information as to the existence of other policies is required when such claims are presented.

Appellant bases his claim that the judgments upon which he was sentenced to pay fines are null and void because of the provisions of sections 17 and 801 of the Penal Code. The applicable portion of section 17 provides that when a crime punishable by imprisonment in the state prison is also punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes *after a judgment* imposing a punishment other than imprisonment in the state prison; while section 801 directs that an indictment, information or complaint for any misdemeanor must be filed within one year after its commission. Because more than one year elapsed between the date when the crimes charged were committed and the filing of the complaint or information herein, it is urged that, being made misdemeanors through imposition of fines, the prosecution of such offenses was barred by the statute of limitations. *Doble* v. *Superior Court,* 197 Cal. 556, 576 [241 P. 852], furnishes a complete answer adverse to appellant's

claim. In that case it was held that the provision of Penal Code, section 17 upon which appellant relies had a prospective operation; that by the words "after a judgment" it was meant that the crime should be regarded as a misdemeanor only for purposes subsequent to judgment if a fine or county jail sentence be imposed; and that the judgment by which the crime was made a misdemeanor was not to have a retroactive effect so far as the statute of limitations is concerned. the rule enunciated in the Doble case was considered and approved in *People* v. *Lippner,* 219 Cal. 395, 404 [26 P.2d 457]; *People* v. *Cowan,* 38 Cal.App.2d 231, 244, 245 [101 P.2d 125, 135]; *In re Miller,* 218 Cal. 698, 700 [24 P.2d 766]. The cases of *People* v. *Angelo,* 24 Cal.App.2d 626 [75 P.2d 614], and *People* v. *Picetti,* 124 Cal. 361 [57 P. 156], are easily and readily distinguishable in their factual background from the case at bar. In both of the last cited cases the defendant was charged with grand larceny or grand theft and found guilty of petty larceny in the one and petty theft in the other. In both cases the evidence clearly showed that the defendant stole less than the amount of money necessary to constitute such theft a felony. It was therefore a misdemeanor *ab initio* and the application of section 801 was justifiable and proper. But that is not the case here. The acts committed by appellant constituting the particular offenses for which he was tried are designated in the statute as a felony. The crimes remained felonies until the court had completed a rendition of judgments therein. Therefore, as heretofore pointed out the provision of section 17 being prospective and not retrospective in operation, the judgments pronounced thereon are immune from the attack made by appellant upon their validity.

Appellant's second ground for reversal is based upon the claimed prejudicial misconduct of the district attorney in referring to the previous conviction of appellant when such conviction had theretofore been admitted by him outside the presence of the jury. In this connection it appears that as part of the proof in support of the counts in the information charging perjury and subornation of perjury upon which appellant was convicted there was introduced at his trial reporters' transcripts of testimony taken at the hereinbefore referred to civil trial had in the Municipal Court of the City of Los Angeles on August 20, 1940. It was at such municipal court trial that appellant testified that he had treated the insured, Bernice Jackson, for a broken arm and at the

same trial he produced an X-ray in support of such claim. It was shown, however, at the criminal trial of appellant with which we are here concerned that all of such testimony was false and that the X-ray was one of a different person. In connection with the introduction of the municipal court transcripts it appears that rather than require the reporters of that court to remain in attendance at appellant's trial in the superior court it was stipulated that if called as witnesses such reporters would testify that the transcripts correctly reflected the testimony given at the trial of the civil case. During appellant's superior court trial and some two weeks after the foregoing stipulation was entered into the deputy district attorney offered to read into evidence "pursuant to the stipulations previously entered between counsel as to the testimony of the court reporter" the transcript of testimony given at the aforesaid municipal court trial. No objection whatever was made to reading the testimony of appellant although some two weeks had elapsed between the time when it was stipulated the transcript might be read instead of requiring the presence of the reporter, thereby affording appellant ample opportunity to examine the transcript to discover what if any portions thereof were objectionable. The record discloses that in reading the cross-examination of appellant at the municipal court trial as contained in the transcript the deputy district attorney read therefrom the following questions:

"Q. You don't follow that procedure?

"A. No.

"Q. *Have you ever been convicted . . . withdraw that.*

"Q. Did you ever know Bernice Jackson by any other name other than that name?"

It is now urged by appellant that the uncompleted question "Have you ever been convicted . . ." as read from the municipal court transcript implanted in the minds of the jurors at least a suspicion if not a fixed belief that appellant had suffered a prior felony conviction and militated so seriously against his right to a fair and impartial trial as to require a reversal of all the judgments rendered against him. We do not think so. It is at once apparent that the action of the deputy district attorney in reading the quoted portion of the question was inadvertent and not wilful because it is evident that as soon as he caught the import of the interrogatory and before a completion of its reading he withdrew it

at once, thereby manifesting his fairness. This is quite different from a situation where from the record it may be definitely determined that a prosecuting officer has deliberately framed a question in such a manner as to make it appear that it is a proper question, but in truth it is designed to elicit an answer which the prosecuting officer well knows would place before the jury inadmissible evidence. This court has on more than one occasion reiterated the principle that Penal Code section 1093, subdivision 1, was intended to keep from the jurors all knowledge that the accused had been previously convicted of an offense where such prior conviction is admitted unless the defendant becomes a witness in his own behalf and is interrogated as to such prior conviction by way of impeachment or where evidence of such prior conviction is relevant or material to an issue in the case, (*People* v. *Duvernay,* 43 Cal.App.2d 823, 825 [111 P.2d 659] ; *People* v. *Jeffries,* 47 Cal.App.2d 801, 804 [118 P.2d 190]). But under the circumstances here presented where appellant knew or had reasonable opportunity to familiarize himself with the contents of the transcript and neither objected to any portion of it being read into evidence and did not ask the court to admonish the jury after the manifest inadvertence on the part of the deputy district attorney in partially reading an objectionable question from the transcript we cannot hold that a reversal is either required or proper. Furthermore we are not persuaded that enough of the question was read to arouse in the minds of the jurors any fixed belief or well-grounded suspicion that appellant had suffered a prior conviction. He having agreed to a reading of the transcript in question to the jury, and the prosecutor having attempted to protect appellant as best he could after only partially reading the question and then withdrawing it, there is no basis for a reversal when objection is made for the first time on appeal.

Finally appellant contends that the court erred in giving to the jury instructions on the law of conspiracy when no conspiracy was charged and according to appellant the case was not tried on the theory that a conspiracy existed between him and his co-defendant. However these claims upon the part of appellant are not borne out by the record. In his opening statement made at the outset of the trial the district attorney informed the jury that the prosecution would try the case in which the defendants were jointly charged, upon

the theory that both defendants acted in concert and aided and abetted each other in the commission of the offenses therein alleged. Throughout the course of the trial the theory of conspiracy was constantly before the jury through the introduction of both direct and circumstantial evidence. It was shown that both defendants met together, consulted together and combined together to commit the unlawful acts charged against them in presenting falsified claims to various insurance companies for one and the same injury. The fraudulent representations made to the insurers were made by each defendant acting in conjunction with the other. It is of course firmly established in the law of this state that it is not necessary for the information to charge specifically a conspiracy to render evidence of a conspiracy admissible (*People* v. *Gregory,* 12 Cal.App.2d 7, 15 [54 P.2d 770] and cases therein cited). The factual situation in the case at bar is therefore clearly distinguishable from the case of *People* v. *Sheffield,* 108 Cal.App. 721 [293 P. 72], relied upon by appellant and wherein it was repeatedly stated and constantly urged that no conspiracy existed. In view of the foregoing principles, coupled with the fact that the instant case was tried upon the theory of an unlawful combination and conspiracy between the defendants insofar as the offenses charged against them in information numbered 84905 is concerned. it follows that the giving of admittedly correct instructions upon the subject of conspiracy did not constitute error.

For the foregoing reasons the judgments and the order denying defendant's motion for a new trial are and each of them is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied February 3, 1943, and appellant's petition for a hearing by the Supreme Court was denied February 18, 1943.