[Crim. No. 4457.   Second Dist., Div. Two.   Oct. 16, 1950.]

THE PEOPLE, Respondent, v. MARSDEN WHELPTON et al., Appellants.

Arthur C. Fisher and John C. Packard for Appellants.

Fred N. Howser, Attorney General, Frank Richards, Deputy Attorney General, William E. Simpson, District Attorney, Jere J. Sullivan and Richard S. Chapman, Deputy District Attorneys, for Respondent.

McCOMB, J.—After trial before the court without a jury, defendants Whelpton and Wilkins were found guilty on six counts of violating the Corporate Securities Act. From the

judgments and orders denying their motions for a new trial, they appeal.*

Defendants contend the evidence is insufficient to sustain their conviction.

This proposition is untenable. The evidence discloses that the Chino Hills Oil Company, a California corporation, was organized April 23, 1943. Defendant Whelpton, one of the organizers, was issued a permit on September 16, 1943, to sell and issue 1,765 shares of stock to certain named persons. The stock was placed in escrow and never removed therefrom. The final expiration date of such permit was February 15, 1944. After such date and about September 20, 1947, Mrs. Hostettler loaned to the corporation two separate sums, one of $200, the other of $500; received a receipt therefor signed by defendant Whelpton as vice president-treasurer. At the time she made the loan she was told by defendant Whelpton that if they got oil production they would refund the money to her or she could turn the receipt in and get shares of stock for it. Defendant Wilkins made similar statements to her. Such evidence is sufficient to sustain the conviction on count 8 of the information.

On August 7, 1948, and again on August 18, 1948, defendant Wilkins told Mr. Kirscherman that the Chino Hills Oil Company was drilling for oil and that if he would loan the company money, when the well got into production the Corporation Commissioner would be asked for a permit to issue more stock and he would immediately be given his money back with which he could buy stock. Relying on this statement he gave her a check for $1,500 dated August 7, 1948, another for $1,500 dated August 18, 1948, and received a receipt signed by defendant Whelpton as vice president-treasurer. Such evidence sustains the convictions under counts 10 and 11 of the information.

Defendant Wilkins on or about August 7, 1948, told Mr. Mettler that the Chino Hills Oil Company needed some money to buy casing; that the well was finished, and that after production had been obtained, he could get shares of stock in the corporation for $10 per share. On August 20, 1948, and September 7, 1948, defendant Wilkins repeated the same statements to Mr. Mettler; on August 7, 1948, he gave her

---

*Defendant's brief does not conform with rule 15(a) of the Rules on Appeal (22 Cal.2d 12) in that it is not prefaced by a topical index of its contents or a table of authorities.

his check for $2,500, on August 20, 1948, gave her another check for $2,000, and on September 7, 1948, a similar check for $2,500. In connection with each of these transactions he received a receipt from the corporation signed by defendant Whelpton, vice president-treasurer. Such evidence sustains the convictions under counts 12, 13 and 14 of the information.

The circumstances pertaining to these transactions, to wit, the written statements in each receipt that the money was a "loan to Chino Hills Oil Co."; the representations by the defendants as part of the transactions that the investors' money could be used for the purpose of buying stock in the company, was a "sale" of a "security" as these words are defined in the Corporate Securities Law. A share of stock is a "security" and a "sale" includes an offer to sell, an attempt to sell, a solicitation of sale, an option to sell or a contract to sell. (Corporate Securities Law, §§ 26104, 25500, 25008); Deering's Corp. Code, 1949 Supp.) Under the law defendants' statements to the investors that their receipts or loans might be used to buy stock in the corporation was a sale under the circumstances of this case.

There is no merit in defendants' contention that since the receipts which were issued indicated on their face that the transaction in each instance was a loan the transactions were exempt from the Corporate Securities Law under section 25102(c) (formerly Corporate Securities Act, § 2, para. (b), subd. 11 [Stats. 1937, p. 1431]).

Such receipts, it is apparent when considered in connection with the other evidence received, were mere subterfuges for the purpose of avoiding the other provisions of the act. In effect the investors were told that by loaning money at that time they would be given stock when the oil well was placed upon production. (*People* v. *Sidwell*, 27 Cal.2d 121, 128 [162 P.2d 913]; *People* v. *Aresen*, 91 Cal.App.2d 26, 36 [204 P.2d 389, 957].)

Neither is there any merit in defendants' contention that these transactions were not with the general public but only with the stockholders of the Chino Hills Oil Company. While the group solicited by defendants was comparatively small, it nevertheless constituted "the public" under the Corporate Securities Act. (*Mary Pickford Co.* v. *Bayly Bros. Inc.*, 12 Cal.2d 501, 514 [86 P.2d 102].) The transaction in question did not fall within the provisions of section 25009, subdivision (c) of the Corporate Securities Law. De-

fendants violated the act when they gave the investors an option to buy stock in the corporation in consideration of their making purported loans to it. (*People* v. *Boles,* 35 Cal.App. 2d 461, 463 [95 P.2d 949].)

Finally, defendants' proposition that the conviction under count 8 may not stand because "there is no charge that defendant Whelpton conspired with defendant Wilkins" is untenable.

A conspiracy need not be pleaded in an information if the evidence actually shows the existence of one. (*People* v. *Tanner,* 3 Cal.2d 279, 299 [44 P.2d 324] ; *People* v. *Weaver,* 56 Cal.App.2d 732, 740 et seq. [133 P.2d 818] ; *People* v. *Gregory,* 12 Cal.App.2d 7, 15 et seq. [54 P.2d 770].) The evidence disclosed that Mrs. Hostettler had known both defendants since 1932; that she saw them at the well and in the office of the corporation many times, and was told by them that the receipts for the money she loaned could be turned in for stock in the corporation. In each of the other transactions defendant Wilkins solicited the money and defendant Whelpton issued the receipts therefor. In addition both defendants tried to obtain a loan of $30,000 from Messrs. Mettler and Kirscherman.

The foregoing evidence is sufficient to support the trial court's implied finding that defendants conspired and agreed to undertake the performance of an unlawful act.

Judgments and orders are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.