[Crim. No. 6772. Second Dist., Div. Two. Apr. 27, 1960.]

THE PEOPLE, Respondent, v. LEE C. SMITH, Appellant.

Newell John Gardner for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

FOX, P. J.—This is an appeal by the defendant, Lee C. Smith, from a judgment of conviction on three counts of selling and causing to be sold securities without a permit therefor in violation of the Corporate Securities Law (Corp. Code, § 26104, subd. (a)) and from a denial of his motion for a new trial.

Defendant Smith is the developer of a "three-dimensional" milling machine which is designed to produce aircraft parts more economically than other methods. In order to finance a company to exploit this invention, Smith approached potential investors through personal contacts and through agents. Money was advanced to Smith by various persons, all of whom received "receipts" in the form of a promissory note. All of the investors believed that they were purchasing shares in a corporation known as Jet Air-Age and that they would be issued such shares in the future. Several investors paid money over to Smith prior to the actual incorporation of Jet Air-Age, which was accomplished in February, 1957. The permit which was granted to Jet Air-Age was a "closed permit" which meant that any further sale outside of the original transfer would require the approval of the Commissioner of Corporations. The corporation at no time was authorized to sell stock to the general public. The original issue was 115,000 shares which the corporation was authorized to issue to Smith to cancel an indebtedness of the corporation to him. This stock was escrowed.

Smith challenges the judgment on the theory that the evidence is insufficient to sustain the conviction. This proposition is untenable.

As to count I, the evidence discloses that one Robert Zoll was induced by Smith to invest in the business venture. Smith discussed the capabilities of his new machine with Zoll and told him that an enterprise known as Jet Air-Age, Incorporated, was to be formed and that Zoll would receive one share of stock for every dollar invested. Zoll was to receive the stock when it was issued. Several days later, Zoll gave Smith $300 in cash and received a receipt from Smith. Later, a second receipt for the same amount was given to Zoll and the original receipt was called back. Subsequently, Zoll gave Smith $100 at one time and $600 at a later time, for which he received, in each instance, a receipt. Each of the receipts was in the form of a promissory note. Zoll gave the money to Smith in reliance upon Smith's promise that Zoll was to

receive shares of stock in Jet Air-Age, Incorporated, on the basis of one share for each dollar invested. Zoll never received any stock nor was the money ever refunded. Whenever he approached Smith about the stock, Smith told him that the stock was in escrow and would be issued within a short time.

Count III charged Smith with the sale of securities to Gareno DeJulio without a permit. The evidence discloses that DeJulio gave a check for $3,000 to one Henry Kropp who solicited and sold investments to various persons on behalf of Smith, receiving 20 per cent of any money thus collected. DeJulio was told that he would receive 1,500 shares for this money when the shares were issued. The first receipt given to DeJulio by Kropp evidenced that it was in payment of shares of stock. This receipt was retrieved from DeJulio by Kropp who informed him that Smith would not accept it since it was specifically made out for shares. A new receipt in the form of a promissory note was given to DeJulio. The payment was by check and was made in October of 1956, prior to the incorporation of Jet Air-Age. The check was endorsed on the back: "Jet Air-Age, Incorporated, by Lee C. Smith." DeJulio relied upon the representations made to him by Kropp that he would receive shares of stock in Jet Air-Age, Incorporated, and believed that he was paying for such shares by the $3,000 check. He never received any stock nor has he been repaid.

Count V charged Smith with the sale of securities to one L. B. Strawn without a permit. Although Smith does not question the sufficiency of the evidence as to Count V, it should be noted that, as was the case in counts I and III, a promissory note was given in exchange for cash and Strawn paid the money believing that he was buying shares of stock in Jet Air-Age.

The evidence thus clearly establishes that the investments made by Zoll, DeJulio and Strawn were cast in the form of loans to Smith in return for which Smith gave each investor receipts in the form of promissory notes. However, each of the investors was told by Smith or Kropp that in return for their money, they were to be issued shares of stock in Jet Air-Age, Incorporated. Smith argues that the evidence clearly establishes that only loans were made and that there was no prohibited sale of securities. However, this court must look to the substance and not the form of the transaction, for that will determine its character. (*People* v. *Sidwell*, 27 Cal.

2d 121, 128 [162 P.2d 913].) *People* v. *Whelpton,* 99 Cal. App.2d 828 [222 P.2d 935], is apposite. In that case, investors loaned money to an oil company with the understanding that the loan could later be converted into stock. The court, at page 831, said: "The circumstances pertaining to these transactions, to wit, the written statements in each receipt that the money was a 'loan to Chino Hills Oil Co.'; the representations that the investors' money could be used for the purpose of buying stock in the company, was a 'sale' of a 'security' as these words are defined in the Corporate Securities Law. A share of stock is a 'security' and a 'sale' includes an offer to sell, an attempt to sell, a solicitation of sale, an option to sell or a contract to sell. (Corporate Securities Law, §§ 26104, 25500, 25008; Deering's Corp. Code, 1949 Supp.) Under the law defendants' statements to the investors that their receipts or loans might be used to buy stock in the corporation was a sale under the circumstances of this case.

█ "There is no merit in defendants' contention that since the receipts which were issued indicated on their face that the transaction in each instance was a loan the transactions were exempt from the Corporate Securities Law under section 25102(c)....

"Such receipts, it is apparent when considered in connection with the other evidence received, were mere subterfuges for the purpose of avoiding the other provisions of the act. In effect the investors were told that by loaning money at that time they would be given back stock when the oil well was placed upon production. (*People* v. *Sidwell,* 27 Cal.2d 121, 128 [162 P.2d 913]; *People* v. *Aresen,* 91 Cal.App.2d 26, 36 [204 P.2d 389, 957].)"

█ Furthermore, in *People* v. *Aresen, supra,* the court held (p. 36): "that the acts of defendant in delivering his personal note to persons to whom he was selling stock is not a defense to a charge of violating the Corporate Securities Act by knowingly selling stock without a permit. . . ." Thus the money paid to Smith was paid pursuant to a sale of a security within the purview of Corporate Securities Law and since Smith had no permit for such sales, the evidence clearly establishes a violation of that law.

With respect to Zoll (count I), Smith argues that he was a joint adventurer and thus contributions made by him could not be sales of securities in any event. This argument is entirely specious. █ To constitute a joint venture "there

must be a community of interest in the enterprise, a sharing of profits and losses, and joint participation in conduct of the business." (*Lasry* v. *Lederman*, 147 Cal.App.2d 480, 485-486 [305 P.2d 663].) There is no showing in this record of any facts which would justify the conclusion that Zoll was a joint adventurer in Jet Air-Age. He was a part-time employee and an investor on a small scale. Although theoretically he would share in profits if any there were, there is no evidence that he exercised any degree of control of the business. His duties as an employee were limited to those of machinist and "general helper."

 With respect to count III, Smith contends that the sale of securities to DeJulio, if that was the nature of the transaction, was handled entirely by Henry Kropp, who was Smith's agent, and that he did not authorize Kropp to sell stock but only to solicit loans. He further contends that a principal can only be liable for the criminal acts of his agent if he authorizes such conduct. However, Kropp testified that he was employed by Smith to sell stock in Jet Air-Age, Incorporated, and that Smith told him the stock was in escrow but the investors would receive shares as soon as the escrow was closed. All the money collected went to Smith and Kropp was paid 20 per cent of the amount collected for his efforts. Smith did not take the stand to refute this testimony. This evidence is sufficient to show that Kropp was acting under the direct authority of Smith and that his activities were conducted in accordance with Smith's plan to sell securities in the guise of loans. Implicit in the judgment of guilt as to count III is the trial court's finding that Kropp was authorized to sell stock, not solicit loans. Since this implied finding is based on substantial evidence, it will not be disturbed on appeal.

 Smith's final contention is that count V was dismissed at the preliminary hearing and that it was error for the trial court to find him guilty on this count. Again, Smith's argument is without merit. The record clearly indicates that the original count V was in fact dismissed at the preliminary hearing. This original count V dealt with a transaction between Smith and a Miss Clegg. However, in the information filed in the superior court, count V concerned the sale of securities to L. B. Strawn, not to Miss Clegg. The sale to Strawn was originally count VII and was *not* dismissed by

the committing magistrate. Thus the count charging Smith with a sale to Strawn was simply renumbered in the superior court information and became count V. There is no semblance of error here.

The judgment and order are affirmed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.