[Civ. No. 24123.   First Dist., Div. Two.   Apr. 22, 1968.]

NATIONAL AUTOMOBILE AND CASUALTY INSURANCE COMPANY, Plaintiff and Appellant, v. J. MARTIN PAYNE et al., Defendants and Respondents.

404

Parker, Stanbury, McGee, Peckham & Garrett and White McGee, Jr., for Plaintiff and Appellant.

.Kelso, Cotton & Ernst, Kelso, Cotton, Seligman & Ray, Godfrey. L. Munter, Jr., and Duane W. Dresser for Defendants and Respondents.

TAYLOR, J.—Plaintiff corporation, National Automobile

and Casualty Insurance Company (hereafter National), filed its complaint for breach of contract, fraud and constructive fraud against defendant corporation, Eldorado Management Company (hereafter Eldorado), and its officers and directors, the individual defendants, J. Martin Payne, W. S. Kiel, Charles McCarty, Harold Dobbs and William T. Cleverdon. This appeal is from the judgment of dismissal entered after the trial court sustained, without leave to amend, defendants' general demurrer to the fraud causes of action of the second amended complaint on the grounds of the statute of limitations (Code Civ. Proc., § 338, subd. 4).

The allegations on which National relies are set forth in its second amended complaint, substantially as follows: About November 1, 1957, National and Eldorado entered into an oral agreement evidenced by certain written memoranda, whereby National was to guarantee 30 percent of a note issued to Eldorado, in return for a 30 percent interest and holding of the Class ''A'' Eldorado common stock issued and outstanding, at $1.00 per share. In September 1957, prior to the agreement, defendant Cleverdon, one of the officers and directors of Eldorado, informed National that there was more than enough stock to take care of National's 30 percent interest. However, this representation was false as in July 1957 Eldorado had granted to the individual defendants options to purchase 70,000 of the total 100,000 shares of Class ''A'' common authorized but unissued. All defendants knew that the representation was false and was made with the intention of deceiving National into making the agreement; that as a result of these misrepresentations, National justifiably relied thereon and entered into the agreement with Eldorado.

The option agreements were set forth on the minutes of the Eldorado directors' meeting of July 26, 1957, but at that time National had no representative on Eldorado's board and had no connection with Eldorado. Before the contract between Eldorado and National, defendant Cleverdon, acting as the agent of each of the other defendants, failed to inform National of the existence of the options. As a signatory to the options, Cleverdon was in the position of superior knowledge to National. Because of Cleverdon's failure to disclose the material fact of the options, National justifiably entered into the agreement for the purchase of 30 percent of Eldorado's stock.

After October 1957, National was represented by two members on the board of directors of Eldorado. At all times, the

relationship between National and Eldorado was such that no suspicion was aroused that their dealings were anything but fair and open. Every time Class "A" common stock of Eldorado was issued, National received enough shares of such stock to bring its holdings up to the contracted for level of 30 percent. There were no circumstances suggesting to National or its representatives on the Eldorado board of directors any need or reason to inspect the minutes of Eldorado board of directors' meetings held prior to October 1957. National did not know of or suspect the existence of the option agreements and at no time was there any circumstance placing it on notice or inquiry concerning the same.

National had no notice of the existence of the options of the individual defendants until October 29, 1962. On that date, National received a memorandum signed by defendant Payne, the president of Eldorado, addressed to "Directors—Eldorado Management Company and Optionees." The memorandum was concerned with the proposed refinancing of Eldorado and noted that there were certain residual optionees.

On December 7, 1962, 321 more shares of Class "A" common stock were issued to National to again bring its interest up to the 30 percent level. On January 18, 1963, National notified all defendants of its position. No Class "A" common stock of Eldorado was issued between December 7, 1962, and March 1965. In March 1965, 30,892 shares of Class "A" common stock were issued to the individual defendants pursuant to a stock issue permit obtained by Eldorado. No stock was issued to National at that time. As a result of the March 1965 issue, National owns only 20.7 percent or 20,732 shares of Eldorado's Class "A" common stock instead of the 30 percent or 30,000 shares provided for by the 1957 agreement. As Eldorado is authorized to issue only 100,000 of such shares, the individual defendants obtained over 9,000 shares of Class "A" common stock rightfully belonging to National.

The original complaint for breach of contract, fraud and constructive fraud was filed on August 31, 1965. Pursuant to a stipulation, demurrers were sustained as to all causes of action and National given leave to amend. The first amended complaint setting forth the same causes of action was filed on February 3, 1966, and a demurrer to the second and third causes of action for fraud and constructive fraud sustained, with leave to amend, on grounds of the statute of limitations. The second amended complaint was filed on June 3, 1966, and

the order sustaining the demurrer to the fraud causes of action, without leave to amend, on June 24, 1966.[1]

Preliminarily, we set forth the well settled rules that govern a reviewing court in considering an appeal from a judgment sustaining a demurrer to a complaint. The allegations of the complaint must be regarded as true. It must be assumed that plaintiff can prove all of the facts as alleged. The court must in every stage of an action disregard any defect in the pleadings that does not affect the substantial rights of the parties (Code Civ. Proc., § 475). Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief. In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties (*Schaefer* v. *Berinstein,* 140 Cal.App.2d 278, 288-289 [295 P. 2d 113]).

While allegations of the complaint are deemed to be true in ruling on the demurrers, where an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity. An appellate court may take judicial notice of a matter even though the record does not show that notice thereof was taken by the trial court (*Taliaferro* v. *County of Contra Costa,* 182 Cal. App.2d 587, 592 [6 Cal.Rptr. 231]). Thus, the demurrer reaches such matters as may be considered under the doctrine of judicial notice (*Morris* v. *Toy Box,* 204 Cal.App.2d 468 [22 Cal.Rptr. 572]).

An action for relief on the ground of fraud must be brought within three years but the cause of action is "not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud" (Code Civ. Proc., § 338, subd. 4). The rules governing the application of this statute are summarized in *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 at p. 437 [159 P.2d 958], as follows: "The provision tolling operation of the statute until discovery of the fraud has long been treated as an exception and, accordingly, this court has held that if an action is brought more than three years after commission of the fraud, plaintiff

---

[1]Accordingly, the first cause of action for breach of contract is not involved in this appeal.

has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint. (Citations.) Further, although negligence by the person defrauded is not a defense to a promptly brought action based upon intentional misrepresentation (citation), the cases construing section 338, subdivision 4, *supra,* have held that plaintiff must affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry. (Citations.)''

It is not in every case that a person is barred after three years by failure to pursue an available means of discovering possible fraud. The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry. Section 19 of the Civil Code provides: ''Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.''

When the facts known to the plaintiff are susceptible to opposing inferences, the question of whether he has notice of circumstances sufficient to put a prudent man upon inquiry is a question of fact (*Hobart* v. *Hobart Estate Co., supra,* at p. 440; *Ramey* v. *General Petroleum Corp.,* 173 Cal.App.2d 386, 400 [343 P.2d 787] ; *Sime* v. *Malouf,* 95 Cal.App.2d 82, 104 [212 P.2d 946, 213 P.2d 788] ). On the other hand, when knowledge had by or imputed to plaintiff is such as to compel the conclusion that a prudent man would have suspected the fraud, the court may determine, as a matter of law, that there had been discovery (*Helfer* v. *Hubert,* 208 Cal.App.2d 22, 26-27 [24 Cal.Rptr. 900] ; *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 430 [106 P.2d 423] ; *Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482, 486 [45 P. 809] ).

*The only question here presented is whether the trial court, as a matter of law, properly determined from the allegations in the second amended complaint that National should have discovered the existence of the individual defendants' options before 1962.*

National, relying on *Hobart* v. *Hobart Estate Co., supra,* contends that as a shareholder, like the plaintiff in that case,

it is to be excused from its late discovery of the options concealed by the officers and directors of Eldorado. While we recognize the liberalization of the discovery rules relating to shareholders established by the *Hobart* case, we do not think it applicable to the instant case because of several distinguishing factors. In *Hobart,* the individual who made the representations in question to the plaintiff shareholder was president, director, general manager and the majority stockholder of the family corporation and was the only person who had intimate and exclusive knowledge of the corporate affairs. The plaintiff was not familiar with financial matters in general or the affairs of the corporation. In addition, the value of the corporation's assets was inaccurately recorded in the corporate books so that the plaintiff could not have ascertained the true value of the stock from this source. There was no other source of information than the particular defendant. Under these circumstances, as well as others, including plaintiff's five-year absence from the country, the court held that the plaintiff was justified in bringing the action more than three years after the particular fraudulent representation in question.

In other authorities cited by National, one or more of the same distinguishable factors appear. These cases generally concern a plaintiff shareholder without any familiarity with financial matters and the affairs of the corporation or voice in its management, or a defendant with the requisite knowledge and position to lull the plaintiff into a sense of security, and a misrepresentation or concealment of the particular facts on the corporation's books and public records. For example, in *Denson* v. *Pressy,* 13 Cal.App.2d 472, 475 [57 P.2d 522], the parties had become close friends socially. The plaintiff shareholder was lulled into a sense of security by the defendant's representations and thus any suspicion that might have prompted him to make an investigation was diverted. The plaintiff had no knowledge of the affairs of the corporation and relied entirely on the defendant. In *Prewitt* v. *Sunnymead Orchard Co.,* 189 Cal. 723 [209 P. 995], the defendant corporation called secret shareholder meetings without informing plaintiff shareholder. The plaintiff (as in *Hobart*) was a person without any experience or knowledge of the affairs of corporations or financial matters, and had regularly sought information from the defendants and on each occasion had relied on defendants' representations. In *Mortimer* v. *Loynes,* 74 Cal.App.2d 160 [168 P.2d 481], involving liquidation pro-

ceedings of a building and loan association by the state, nothing appeared on the books and records of the corporation to indicate the fraudulent facts and only the defendants had knowledge of the corporation's secret profits. In *Schaefer* v. *Berinstein, supra,* likewise the defendant, in this taxpayer's representative action, had caused the records of the city to be kept improperly and inadequately and at all times refused to allow other officials to inspect the files and records and never rendered an accounting of his activities except orally.

In *West* v. *Great Western Power Co.,* 36 Cal.App.2d 403 [97 P.2d 1014], relied upon by appellant, the significant fact was that the plaintiff shareholder was never an officer or director of either of the defendant corporations. In the instant case, National was not a mere shareholder or outsider divorced from the operations of Eldorado. Since October 1957 National had two representatives on the Eldorado board of directors who, like the other directors, were responsible for managing the affairs of Eldorado. Thus, for eight years prior to the filing of this action, National's representatives participated in the management of Eldorado. Significantly, there are no allegations that secret meetings of the board of directors were held without them or that the existence of the options did not appear on the records of Eldorado. In fact, National concedes that the options were set forth in the July 1957 minutes. Directors, unlike ordinary shareholders, have an absolute right to inspect the books of the corporation (Corp. Code, § 3004). Under these circumstances, it ill becomes National to attempt to don the frock of the outside shareholder without any knowledge of financial matters or the affairs of Eldorado.

The options here in question did not relate to only a few shares but to the remaining 70 percent of the shares Eldorado was authorized to issue. Significantly, while the complaint alleges that the March 1965 issue of stock was made pursuant to a stock issuance permit, it is silent concerning permits as to the stock issues between 1957 and 1962, which took place while National's representatives sat on the board of Eldorado. *There is no allegation that these issues were made without the requisite permits or in violation of the provisions of the Corporations Code, of which we may take judicial notice.*

Chapter 4 of the Corporations Code, the Corporate Securities Law, prohibits the sale of securities by a corporation without a permit from the Corporations Commissioner (Corp.

Code, §§ 25500 et seq.).[2] The sale of securities for which a permit is required impliedly represents that such a permit has been secured (*Ruffinilli* v. *Jordan*, 216 Cal.App.2d 59, 61 [30 Cal.Rptr. 780]). Accordingly, and in view of no allegation to the contrary, we must assume that the 1957-1962 issues of Class "A" common stock were made pursuant to a permit and the conditions thereof.

An application for a permit must be verified (Corp. Code, § 25501) and must contain numerous supporting documents, including the financial statements of the corporation (Corp. Code, § 25502; Cal.Admin.Code, tit. 10, §§ 325-331, §§ 426-440). Option arrangements as well as the class and amount of securities subject to options and the exercise price of options are required to be described in the corporation's financial statements, as a condition precedent to the issuance of the necessary permits (1 Ballantine & Sterling, Cal.Corp. Laws (4th ed.) § 98). Section 25314 of the Corporations Code provides that all documents filed with the Corporations Commissioner shall be open to public inspection. Thus, presumably the financial statements setting forth the existence of the options were not only of public record but were acted upon by National's own representatives on the Eldorado board of directors.

The contention that the 1957-1962 issues were not sufficient to put National on notice or require further inquiries is too narrow a view of the duties of directors with respect to a matter as basic as the capital structure of the corporation and the issuance of shares. The duties of directors, particularly in relation to determining and granting options and other rights relating to the issuance of shares are spelled out in numerous provisions of the statutes (Corp. Code, §§ 304, 1102-1106, 2402, 2407, 2481). Directors may not abdicate their authority by delegating their powers of management of the corporation to other persons (*Dyer Bros. etc. Iron Works* v. *Central Iron Works*, 182 Cal. 588 [189 P. 445]), and cannot divorce the responsibilities of their office from the duties prescribed by statute (*Minton* v. *Cavaney*, 56 Cal.2d 576, 580 [15 Cal.Rptr. 641, 364 P.2d 473]). A knowledge of the basic capital structure of the corporation would appear to be a minimal requirement of the reasonable exercise of such duties.

[2]The Class "A" common stock issued by Eldorado between 1957-1962 was clearly a security subject to the statute as were the options granted to the individual defendants (*People* v. *Boles*, 35 Cal.App.2d 461 [95 P.2d 949]; *People* v. *Whelpton*, 99 Cal.App.2d 828 [222 P.2d 935]).

Section 820 of the Corporations Code provides that directors and officers must exercise their powers in good faith and with a view to the interests of the corporation. They occupy a fiduciary relationship to the corporation and are bound to exercise that degree of care that men of common prudence take of their own concerns (*Sheppard* v. *Wilcox*, 210 Cal.App. 2d 53 [26 Cal.Rptr. 412]). Thus, directors cannot close their eyes to what is going on about them in the conduct of the business of the corporation. It appears to us, as a matter of law, that to remain unaware of the stock options noted in the corporate records, after having obtained permits and otherwise participated in the stock issue between 1957-1962, clearly constitutes a failure to exercise a prudent performance of a director's duties.

National, citing cases such as *Seeger* v. *Odell*, 18 Cal.2d 409 [115 P.2d 977, 136 A.L.R. 1291], argues that whenever a fraudulent representation of fact is made, the party receiving it is generally entitled to rely and act on it and is not bound to verify it by an independent investigation. But this well established rule, as stated in *Seeger*, applies only to the question of whether actionable fraud was initially committed. On the limitations issue, the court, in *Seeger*, required a showing that the plaintiffs were not negligent in failing to make the discovery sooner. Thus, here, on the fraud question, the directors of National may not have been required to look back into the July 1957 minutes of Eldorado at the time of the original agreement between the two corporations. However, the rule cannot be applied on the limitations issue, to absolve them from performing their duties as directors of Eldorado afterwards and from taking cognizance of the obvious and important facts relating to the capital structure of Eldorado that are readily available on the books and records of the corporation, as well as matters of public record in the requisite applications for permits to issue shares.[3]

---

[3]In *Turner* v. *Lundquist* (9th Cir. 1967) 377 F.2d 44, an investor filed an action for monetary relief based on alleged violations of certain federal statutes prohibiting the use of manipulative or deceptive devices in the sale of securities. In the absence of a federal statute of limitations, the court applied subdivision 4 of section 338 of the Code of Civil Procedure. The court, noting that the plaintiff investor knew from the annual financial reports of the corporation more than three years before suit, that, among other things, the corporation had not been returned to profitable operations, held the action barred. The court pointed out that failure to discover all of the details of the fraud did not prevent the statute of limitations from running.

Here, it must be presumed that the directors representing National were aware of and participated in the issues of common stock that were made between 1957 and 1962. There is no allegation that they held their positions in name only and never exercised any of their powers as directors (cf. *Berg* v. *King-Cola, Inc.*, 227 Cal.App.2d 338 [38 Cal.Rptr. 655]).[4] As stated in *Lady Washington Consol. Co.* v. *Wood, supra*: "It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence, and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; and he must also show the times and the circumstances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge are equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on an inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts."

In the instant case, the options were set forth in the books and records of the corporation. With the means available to National through its representatives on the Eldorado board of directors, particularly in view of the required board action in relation to the stock issues between 1957 and 1962, the existence of the options should, in the exercise of due diligence, have been discovered by plaintiff long before the start of the

---

*Security First Nat. Bank* v. *Ross*, 214 Cal.App.2d 424 [29 Cal.Rptr. 538], held that where a trustee through a tax sale acquired a 3/4 interest in property in which the trust had a 1/4 interest, as to the tolling of the statute of limitations, constructive notice of any wrongdoing by the trustee was given to all persons interested by the public nature of the tax sale.

[4]*Berg* v. *King-Cola, Inc.*, 227 Cal.App.2d 338 [38 Cal.Rptr. 655], is completely distinguishable. In that case, the plaintiff (an elderly widow) was an officer and director of the corporation but was not versed in corporate and legal matters and performed only those acts for the corporation that her brother-in-law directed her to perform. She advanced over $29,000 to the corporation under the expectation that stock would be issued to her and without any knowledge that stock had already been issued to the brother-in-law. The court held that, under the circumstances, the fact that the plaintiff was an officer and director of the corporation did not bar her right to recovery against the corporation or, as a matter of law, put her on notice that the stock had been issued.

three-year statutory period immediately preceding the filing of this action.

The judgment appealed from is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 19, 1968.